IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

STACEY MARKUS

    Plaintiff,

v.                                  CIVIL ACTION NO.: 2:19-cv-00691

MINGO HEALTH PARTNERS, LLC,
a West Virginia limited liability company
d/b/a WILLIAMSON MEMORIAL HOSPITAL;
CHARLES HATFIELD, individually;
SAM KAPOURALES, individually; and
DOUG REYNOLDS, individually,

    Defendants.

## COMPLAINT

1.     The plaintiff, Stacey Markus, brings this action against the defendants for their discriminatory actions against the plaintiff.

## PARTIES

2.     The plaintiff, Stacey Markus, was at all times relevant herein, a resident of Mingo County, West Virginia.

3.     The defendant, Mingo Health Partners, LLC d/b/a Williamson Memorial Hospital, is a West Virginia limited liability company and at all times relevant herein was doing business in Mingo County, West Virginia.

4. The defendant, Charles Hatfield, was at all times relevant herein a resident of West Virginia, and at all times relevant herein, was an owner of Williamson Memorial Hospital and was involved in the decision to terminate the plaintiff.

5. The defendant, Sam Kapourales, was at all times relevant herein a resident of West Virginia, and at all times relevant herein, was an owner of Williamson Memorial Hospital and was involved in the decision to terminate the plaintiff.

6. The defendant, Doug Reynolds, was at all times relevant herein a resident of West Virginia, and at all times relevant herein, was an owner of Williamson Memorial Hospital and was involved in the decision to terminate the plaintiff.

## FACTS

7. The plaintiff, Stacey Markus, was employed by the defendant Mingo Health Partner's predecessor for approximately one and a half years as the Chief Nursing Officer.

8. On or about June 1, 2018, the defendant Mingo Health Partners, LLC purchased the Williamson Memorial Hospital from the plaintiff's previous employer and the defendant Mingo Health Partners, LLC assumed control of the operations and assets at Williamson Memorial Hospital becoming the plaintiff's employer as of June 1, 2018.

9. In early June 2018, the defendants approached the plaintiff to accept the role of Chief Executive Officer and offered the plaintiff an increase in her compensation commensurate with her new duties as Chief Executive Officer.

10. On June 18, 2018 the plaintiff accepted and assumed the role of Chief Executive Officer of Williamson Memorial Hospital.

11. During her employment, Stacey Markus consistently performed her duties in a satisfactory manner and met the reasonable expectations of her employers.

12. On August 9 or 10, 2018 the plaintiff fell ill with migraines and intractable pain and sought treatment within the Emergency Department at Williamson Memorial Hospital.

13. On August 9 or 10, 2018 the plaintiff was admitted inpatient under the care of Dr. Beckett at Williamson Memorial Hospital.

14. Shortly thereafter, as a result of her medical condition, the plaintiff filed for FMLA benefits.

15. The plaintiff was approved for FMLA leave beginning August 10, 2018 through September 17, 2018 making the defendants aware of her illness and need for a short period of leave.

16. Between August 9 and August 13, 2018, the plaintiff was diagnosed and treated for ischemic hemiplegic migraines, temporal lobe seizures and lesions, parasomnia, and complicated migraines.

17. The plaintiff was first diagnosed with complicated migraines in or about 2008.

18. On or about August 13, 2018, the plaintiff was discharged from inpatient care with instructions to follow up with her primary physician.

19. On August 15, 2018 the plaintiff followed up with treatment with her regular primary physician Dr. Abbas and Lisa McCloud, nurse practitioner.

20. During this time, the plaintiff rented her home in Mingo County, West Virginia from the defendant Charles Hatfield.

21. On or about August 16, 2018, days after being discharged from the hospital but while still under a physician's care, the plaintiff went to the office of the defendant Charles Hatfield to pay her monthly rent.

22. On August 16, 2018 while approaching the office of the defendant Charles Hatfield, Defendant Hatfield questioned the plaintiff's recent illness.

23. Specifically, Defendant Hatfield stated that he heard or knew of the plaintiff's inpatient admission to the hospital; that she was leaving him "in a pickle" as to running the hospital; that if he had known she had an illness that he never would have promoted her; that she had "no business going to that hospital to be taken care of ;" that "your nurses and your staff should never see the CEO sick like that;" and that he was "wondering if maybe I put too much on you."

24. The plaintiff left the conversation feeling violated and embarrassed that Defendant Hatfield had intimate knowledge of the nature and type of healthcare services the plaintiff received during her brief admission at Williamson Memorial Hospital.

25. On August 19 or 20, 2018, the plaintiff again fell ill a second time and sought treatment at the Emergency Department of Williamson Memorial Hospital and was admitted for an overnight stay and discharged on August 21, 2018 which was known to the defendants.

26. On August 22, 2018 the plaintiff followed up with her healthcare provider Lisa McCloud, NP.

27. On August 23, 2018 the plaintiff followed up with a referral to a vascular neurologist, Dr. Jaramillo, M.D., at Logan Regional Medical Center.

28. Dr. Jaramillo informed the plaintiff that her migraines were complex, ischemic, and hemiplegic at times and that she suffered from temporal lobe seizures.

29. As a result of the plaintiff's condition, Dr. Jaramillo began the plaintiff on seizure treatment.

30. Dr. Jaramillo released the plaintiff to return to work on September 17, 2018.

31. The plaintiff returned to work on September 17, 2018.

32. As a result of the plaintiff being unable to work for a period of weeks between August and September 2018, the defendants were aware of the plaintiff's ischemic hemiplegic migraines, temporal lobe seizures and lesions, parasomnia, and complicated migraines, and/or other physical impairments.

33. The plaintiff was a disabled person within the meaning of the law while she was employed by the defendant Williamson Memorial Hospital.

34. The plaintiff suffered from the above-referenced physical impairments which substantially limited one or more of her major life activities including, but not limited to, caring for herself, driving, performing manual tasks, walking, speaking, and working.

35. The plaintiff was qualified to perform the essential functions of the job while she was employed by the defendant Williamson Memorial Hospital.

36. Additionally, the plaintiff has a record of the above-referenced physical impairments.

37. The defendants regarded the plaintiff as having the above-referenced physical impairments.

38. On the day the plaintiff returned to work, she was immediately summoned to a meeting with Defendant Charles Hatfield, Defendant Sam Kapourales, and Billy Whitt from Williamson Memorial Hospital's Human Resources Department.

39. Defendant Hatfield requested the plaintiff voluntarily resign, and informed her that if she did not resign she would be, alternatively, terminated.

40. The plaintiff did not resign.

41. On September 17, 2018 the defendants willfully, maliciously and unlawfully terminated the plaintiff's employment.

## FIRST CAUSE OF ACTION

42. The defendants' actions constitute an unlawful retaliatory discharge motivated, in whole or in part, by the plaintiff's attempt to receive FMLA benefits, in violation of 29 U.S. Code § 2615.

43. As a direct and proximate result of the defendants' actions, the plaintiff has suffered, and will continue to suffer, lost wages and benefits including interest pursuant to 29 U.S. Code § 2617 (a)(1).

44. As a direct and proximate result of the defendants' actions, the plaintiff is entitled to liquidated damages equal to the sum of her lost wages and benefits pursuant to 29 U.S. Code § 2617 (a)(1).

45. The defendants' actions were not in good faith and entitle the plaintiff to attorney fees and costs pursuant to 29 U.S. Code § 2617 (a)(3).

## SECOND CAUSE OF ACTION

46. The plaintiff Stacey Markus's termination from her employment was based upon, in whole or in part, the plaintiff's disability and/or perceived disability, and/or the

defendants' failure to accommodate the plaintiff's disability, in violation of the West Virginia Human Rights Act, West Virginia Code §5-11-9.

47. As a direct and proximate result of the defendants' actions, the plaintiff has suffered and will continue to suffer lost wages and benefits in an amount to be determined by the jury.

48. As a direct and proximate result of the defendants' actions, the plaintiff is entitled to damages for indignity, embarrassment, humiliation, annoyance, inconvenience, and emotional distress in an amount to be determined by the jury.

49. The defendants' actions were willful, wanton and/or undertaken with reckless disregard and/or reckless indifference to the rights of the plaintiff entitling the plaintiff to punitive damages in an amount to be determined by the jury.

50. The defendants' actions were willful and malicious and violated the West Virginia Human Rights Act entitling the plaintiff to attorney fees and costs pursuant to West Virginia Code §5-11-13 and/or the decisions of the West Virginia Supreme Court of Appeals.

### THIRD CAUSE OF ACTION

51. The plaintiff has a right to privacy and seclusion and to be free from unreasonable intrusion into her right to privacy.

52. The defendants intentionally intruded upon the solitude or seclusion, physically or otherwise, of the plaintiff's private affairs or concerns by obtaining information about the plaintiff's health status, condition, treatment or otherwise provided to her as a patient at Williamson Memorial Hospital.

53. The defendants' conduct was highly offensive to the plaintiff.

54. The defendants' conduct violated the standards of a reasonable person or entity in maintaining the privacy of patients and patient information.

55. As a proximate result of the defendants' conduct, the Plaintiff has suffered indignity, embarrassment, humiliation, annoyance, inconvenience and emotional distress.

**PRAYER FOR RELIEF**

WHEREFORE, the plaintiff prays for the following relief:

1. Damages set forth in this Complaint, including lost wages and benefits, back pay, front pay, liquidated damages, damages for indignity, embarrassment, humiliation, annoyance, inconvenience, emotional distress, and punitive damages in an amount to be determined by the jury;

2. Prejudgment interest as provided by law;

3. Attorney fees and costs; and

4. Such further relief as this court may deem just and equitable.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES TRIABLE TO A JURY.

          STACEY MARKUS
          By Counsel

          /s/ John-Mark Atkinson
          John-Mark Atkinson (WVSB #12014)
          ATKINSON & POLAK, PLLC
          P.O Box 549
          Charleston, WV  25322-0549
          (304) 346-5100
          johnmark@amplaw.com

          Steven S. Wolfe (WVSB#11914)
          Wolfe, White & Associates
          P.O. Box 536
          Logan, WV  25601
          (304) 752-7715
          swolfe@wolfelawwv.com