UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


STACY MARKUS,

        Plaintiff,

v.                              Civil Action No. 2:19-cv-00691

MINGO HEALTH PARTNERS, LLC,
a West Virginia limited liability company,
d/b/a/ WILLIAMSON MEMORIAL HOSPITAL and
CHARLES HATFIELD, individually and
SAM KAPOURALES, individually and
DOUG REYNOLDS, individually

        Defendants.


## MEMORANDUM OPINION AND ORDER

Pending are (1) individual defendants Charles Hatfield, Sam Kapourales, and Doug Reynolds' Motion to Dismiss (ECF 16), filed January 29, 2021, and (2) Plaintiff Stacy Markus' Motion to Amend Complaint (ECF 29), filed May 6, 2021.


### I. Background

Ms. Markus instituted this action on September 23, 2019. See ECF 1. Ms. Markus' complaint alleges the following. The individual defendants – Mr. Hatfield, Mr. Kapourales, and Mr. Reynolds – were owners of defendant Mingo Health Partners, LLC ("Mingo Health"). See id. ¶¶ 3-6. On or about June 1,

2018, Mingo Health purchased Williamson Memorial Hospital (the "Hospital"), which had employed Ms. Markus as the Hospital's Chief Nursing Officer. See id. ¶¶ 7-8. The defendants subsequently offered Ms. Markus the position of the Hospital's Chief Executive Officer, which she accepted on June 18, 2018. See id. ¶¶ 9-10.

On August 9 or 10, 2018, Ms. Markus received inpatient care from a physician at the Hospital due to falling ill "with migraines and intractable pain." See id. ¶¶ 12-13. She was diagnosed with and treated "for ischemic hemiplegic migraines, temporal lobe seizures and lesions, parasomnia, and complicated migraines." See id. ¶ 16. On or about August 13, 2018, she was discharged from the Hospital and instructed to follow-up with her primary physician. See id. ¶ 18. As a result of her condition, Ms. Markus sought leave under the Family Medical Leave Act ("FMLA") and was approved for the same from August 10, 2018, through September 17, 2018. See id. ¶¶ 14-15. She alleges all defendants were aware of her illness and need for leave. See id.

During this time, Ms. Markus was renting her home from Mr. Hatfield. See id. ¶ 20. On or about August 16, 2018, Ms. Markus went to Mr. Hatfield's office to pay her rent and was "questioned" by Mr. Hatfield regarding her recent illness. See

id. ¶ 21-22. She alleges Mr. Hatfield stated he had "heard or knew of [her] inpatient admission to the [H]ospital"; "that she was leaving him 'in a pickle' as to running the [H]ospital"; "that he never would have promoted her" had he known of her illness; "that she had 'no business going to that hospital to be taken care of'"; that Hospital employees "'should never see the CEO sick like that'"; and "that he was 'wondering if maybe [he] had] put too much on [her].'" Id. ¶ 23. Ms. Markus alleges she felt violated and embarrassed by the conversation given, as she says, Mr. Hatfield's "intimate knowledge of the nature and type of healthcare services [she] received" during her stay at the Hospital. Id. ¶ 24.

Shortly thereafter, Ms. Markus became ill a second time and was again admitted to the Hospital, this time for an overnight stay. See id. ¶ 25. On August 21, 2018, she was discharged from the Hospital and alleges all defendants were aware of her stay. See id. After following up with her primary care provider, Ms. Markus was referred to a vascular neurologist at Logan Regional Medical Center and began receiving seizure treatment. See id. ¶¶ 26-28.

On September 17, 2018, Ms. Markus' neurologist cleared her to return to work, which she did that same day. See id. ¶¶ 30-31. On the day of her return, Ms. Markus was called to a

meeting with Mr. Hatfield, Mr. Kapourales, and an individual from the Hospital's Human Resources Department. See id. ¶ 38. During the meeting, Ms. Markus alleges Mr. Hatfield gave her the option to voluntarily resign or be terminated. See id. ¶ 39. Ms. Markus did not resign and was thus terminated by the defendants on September 17, 2018. See id. ¶¶ 40-41. Ms. Markus alleges that, by this time, all of the individual defendants were aware of her illness and treatments at the Hospital and were "involved in the decision to terminate" her employment. Id. ¶¶ 4-6, 15, 32.

As a result of these allegations, Ms. Markus asserts the following claims against all of the defendants: (1) unlawful retaliatory discharge motivated by her taking of leave in violation of the FMLA; (2) wrongful termination on the basis of her disability or perceived disability and failure to accommodate her disability, in violation of the West Virginia Human Rights Act ("WVHRA"); and (3) an invasion of her privacy by unreasonable intrusion upon seclusion. See id. ¶¶ 42-55.

On October 25, 2019 -- approximately one month after the action commenced -- the defendants notified the Court that the Hospital filed Chapter 11 bankruptcy. See ECF 6. On January 24, 2020, the Court stayed the action with respect to Mingo Health but specified the "case shall proceed with respect

4

to the remaining defendants." ECF 7. The individual defendants, however, never filed a responsive pleading by the stipulated deadline, nor did either side proceed with the case as to the individual defendants.[1] On November 20, 2020, the bankruptcy court granted Ms. Markus relief from the automatic stay, permitting her to proceed with her claims against Mingo Health. See ECF 8. On December 20, 2020, the Court lifted the stay in the instant matter. See ECF 9.

On January 24, 2021, the individual defendants moved to dismiss. They contend Ms. Markus' complaint fails to state claims imputing personal liability upon them inasmuch as she omits allegations to pierce the corporate veil under West Virginia law. In other words, the defendants assert that as members of Mingo Health, LLC, they cannot be held personally liable for Mingo Health's actions absent factual allegations that they were acting improperly through their LLC.

Ms. Markus responds that the defendants' assertions are misplaced inasmuch as her claims against them are not based

---

[1] On October 23, 2019, the Court granted the parties' request to extend the defendants' answer deadline to November 13, 2019. See ECF 4. The individual defendants did not answer or otherwise respond to the complaint until January 19, 2021, when they filed the instant motion to dismiss. The parties have not provided an explanation for the more than fourteen-month delay in responding to the complaint or otherwise proceeding with the case.

on a finding of liability through veil piercing. Instead, Ms. Markus contends the defendants can be held individually liable for their (1) participation in her termination under the plain language of the FMLA and the WVHRH, and (2) unreasonable intrusion into her right to privacy and seclusion.

The defendants reply that Ms. Markus' response "is misguided as it refutes an argument Defendants did not make and asserts a point of law [with] which nobody disagrees -- individuals can be held liable under the [FMLA], the [WVHRA], and for an unreasonable intrusion of someone's right to privacy." ECF 22 at 2. They reassert that Ms. Markus' complaint "is wholly insufficient to dissolve the corporate entity and attach personal liability upon the Defendants." Id.

On May 6, 2021, Ms. Markus moved to amend her complaint, attaching the amended complaint thereto. See ECF 29; 29-1. Ms. Markus maintains her contention that the original complaint sufficiently states claims against the individual defendants. She notes that she submitted her motion to amend, however, "to the extent the Court finds a more detailed pleading is necessary." ECF 29 at 1. The amended complaint does not assert a new cause of action but simply adds four additional paragraphs to the "Facts" section, which state the following:

> 42. The defendants Charles Hatfield, Sam Kapourales, and Doug Reynolds acted, directly or indirectly, in the interest of the defendant Mingo Health Partners, LLC d/b/a/ Williamson Memorial Hospital, when they made the decision to terminate the plaintiff's employment.
>
> 43. The defendants Charles Hatfield, Sam Kapourales, and Doug Reynolds made the decision and/or participated in the decision to terminate the plaintiff's employment.
>
> 44. The defendants Charles Hatfield, Sam Kapourales, and Doug Reynolds made the decision and/or participated in the decision to reasonably accommodate the plaintiff's disability.
>
> 45. The defendants Charles Hatfield, Sam Kapourales, and Doug Reynolds aided, abetted, incited and/or compelled the defendant Mingo Health Partners, LLC d/b/a/ Williamson Memorial Hospital to engage in disability discrimination in violation of the West Virginia Human Rights Act.

ECF 29-1 at 6. Ms. Markus contends the defendants are not prejudiced by the amendments and will have ample opportunity to address the issues raised therein.

The defendants respond that Ms. Markus' motion to amend should be denied inasmuch as the proposed amendments are futile. Specifically, the defendants assert the amendments yet fail "to lay the factual predicate necessary to pierce the corporate veil required to avoid dismissal." ECF 32 at 3. They also contend they would be prejudiced by the amendments inasmuch as the veil-piercing issue has already been fully briefed.

The Court will first address the individual defendants' motion to dismiss before turning to Ms. Markus' motion to amend.

## II. Motion to Dismiss

A. Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 550 U.S. at 563); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v.

**Iqbal**, 129 S. Ct. 1937, 1949 (2009) (quoting **Twombly**, 550 U.S. at 570); see also **Monroe v. City of Charlottesville**, 579 F.3d 380, 386 (4th Cir. 2009).

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint . . . .'" **Erickson**, 127 S. Ct. at 2200 (quoting **Twombly**, 127 S. Ct. at 1965); see also **South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co.**, 372 F.3d 245, 255 (4th Cir. 2004) (quoting **Franks v. Ross**, 313 F.3d 184, 192 (4th Cir. 2002)). The court must also "draw[] all reasonable . . . inferences from th[e] facts in the plaintiff's favor . . . ." **Edwards v. City of Goldsboro**, 178 F.3d 231, 244 (4th Cir. 1999).

B.  Discussion

The thrust of the defendants' motion is that Ms. Markus has failed to plead factual allegations surrounding the many factors prescribed by **Laya v. Erin Homes, Inc.**, 117 W.Va. 343, 347-48, 352 S.E.2d 93, 98-99 (1986), that would support a finding necessary to pierce the corporate veil.  Adjudication on that point, however, seems unnecessary given that Ms. Markus' claims all permissibly contemplate individual liability on other grounds.  Indeed, the defendants concede as much in their reply

by stating "nobody disagrees [that] individuals can be held liable under the [FMLA], the [WVHRA], and for an unreasonable intrusion of someone's right to privacy." ECF 22 at 2. Nonetheless, the defendants continue to maintain that Ms. Markus must allege facts sufficient to pierce the corporate veil.

1. Individual Liability Under the FMLA

The FMLA provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). The term "employer" is defined in Section 2611, which includes "any <u>person</u> who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I) (emphasis added). Furthermore, the federal regulations applicable to the FMLA specifically provide that "[i]ndividuals acting in the interest of an employer, such as corporate officers, supervisors and managers, can be held individually liable for violations of the FMLA." 29 C.F.R. § 825.104(d).

Our court of appeals has left open the question respecting whether the FMLA provides for individual liability. <u>Jones v. Sternheimer</u>, 387 F. App'x 366, 368 (4th Cir. 2010). The majority of courts interpreting Section 2611(4)(A)(ii)(I),

however, have concluded that the plain language provides for individual liability, at least in the private sector.[2] See Mitchell v. Chapman, 343 F.3d 811, 827 (6th Cir. 2003) (collecting cases and noting "[a]s under the FLSA, individuals such as corporate officers 'acting in the interest of an employer' are individually liable for any violations of the requirements of the FMLA."); Darby v. Bratch, 287 F.3d 673, 681 (8th Cir. 2002) (noting that private sector employees are subject to liability under the FMLA for actions taken "in the interest of an employer to any employees of such employer."); see also Keene v. Rinaldi, 127 F. Supp. 2d 770, 776 (M.D.N.C. 2000) (noting that the plain language of the FMLA demonstrates an intent to provide individual liability for "persons acting on behalf of private employers" in order to avoid circumvention of the law).

---

[2] The Court notes there is considerable debate amongst district courts in this circuit as to whether the FMLA imposes individual liability upon public employees. See, e.g., Ainsworth v. Loudon County School Bd., 851 F. Supp. 2d 963, 972 (E.D. Va. 2012) (explaining the "split of authority as to whether public employees qualify as 'employer[s]' and hence may be held individually liable under the FMLA."). Inasmuch as the individual defendants in this matter are owners of a private entity, however, the matter is afield. The public-sector situation "is a separate inquiry based largely on principles of statutory interpretation not at issue with regard to individual liability for private sector supervisors." Caire v. Conifer Value Based Care, LLC, 982 F. Supp. 2d 582, 598, n.11 (D. Md. 2013).

The majority view is understandable given the statutory language.  Indeed, the defendants do not contend otherwise, as noted earlier from their reply brief.  Accordingly, Ms. Markus need not allege facts to pierce the corporate veil when her FMLA claim provides an independent basis for individual liability.

### 2.   Individual Liability Under the WVHRA

The WVHRA provides that it shall be an unlawful discriminatory practice "[f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required even if such individual is blind or disabled."  W. Va. Code § 5-11-9(1).  Additionally, the WVHRA states that it shall be an unlawful discriminatory practice "[f]or any <u>person</u>, employer, employment agency . . . to aide, abet incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section."  W. Va. Code § 5-11-9(7)(A) (emphasis added).  The term "person" is defined as "one or more individuals, partnerships, associations, organizations, corporations, labor organizations, cooperatives, legal representatives, trustees, trustees in bankruptcy,

12

receivers and other organized groups of persons." W. Va. Code § 5-11-3(a).

In interpreting these provisions, the Supreme Court of Appeals of West Virginia has held that "[t]he term 'person' as defined and utilized in the context of the [WVHRA], includes both employees and employers." Syl. Pt. 11, <u>Brown v. City of Montgomery</u>, 233 W. Va. 119, 121, 755 S.E.2d 653, 655 (2014) (quoting Syl. Pt. 3, <u>Holstein v. Norandex</u>, 194 W. Va. 727, 461 S.E.2d 473 (1995)). The conclusion is axiomatic, as "[a]ny contrary interpretation, which might have the effect of barring suits by employees against their supervisors, would be counter to the plain meaning of the statutory language and contrary to the very spirit and purpose of this particular legislation." <u>Id.</u>

Accordingly, the WVHRA provides an independent basis upon which to hold the defendants individually liable.

3. Individual Liability for Invasion of Privacy

Under West Virginia law, the common law tort of invasion of privacy includes, <u>inter alia</u>, "an unreasonable intrusion upon the seclusion of another." Syl. Pt. 8, <u>Crump v. Beckley Newspapers, Inc.</u>, 173 W. Va. 699, 703, 320 S.E.2d. 70, 74 (1983). Furthermore, "[a]n agent or employee can be held personally liable for his own torts against third parties and

this personal liability is independent of his agency or employee relationship. Of course, if he is acting within the scope of his employment, then his principal or employer may also be held liable." Syl. Pt. 7, Roof Service of Bridgeport, Inc., v. Trent, 244 W. Va. 482, 486, 854 S.E.2d 302, 306 (2020) (quoting Syl. Pt. 3, Musgrove v. Hickory Inn, Inc., 168 W. Va. 65, 281 S.E. 2d. 499 (1981)).

It is apparent that individuals who invade another's right to privacy are subject to liability for their own tortious acts. As noted in the discussion infra, the same is true respecting individual liability under both the FMLA and WVHRA claims. Inasmuch as each of Ms. Markus' claims against the defendants provide for individual liability, it is ORDERED that the individual defendants' motion to dismiss (EFC 16) be, and hereby it is, DENIED.

III. Plaintiff's Motion to Amend

A. Governing Standard

Pursuant to Federal Rule of Civil Procedure 15, "a party may amend its pleading once as a matter of course within (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion

14

under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A)-(B).

Otherwise, "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave," which should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). A motion for leave to amend should only be denied when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." <u>Laber v. Harvey</u>, 438 F.3d 404, 426 (4th Cir. 2006) (internal quotations omitted).

B.  Discussion

As noted, the defendants contend Ms. Markus' motion to amend should be denied inasmuch (1) the amendments are futile as they would not cure the defects asserted in the defendants' motion to dismiss, and (2) the defendants would be prejudiced by the same given the motion to dismiss has been fully briefed. The disposition of the motion to dismiss, however, neutralizes both contentions.

Inasmuch as the proposed amendments are not prejudicial, futile, and have not been made in bad faith, they are permissible under Rule 15(a)(2). Accordingly, it is ORDERED

that Ms. Markus' motion to amend complaint (ECF 29) be, and hereby it is, GRANTED. The Court ORDERS that the proposed amended complaint be filed today. (ECF 29-1).

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: September 14, 2021

_____
John T. Copenhaver, Jr.
Senior United States District Judge